IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JANET M. TARVER,  )
 )
       Plaintiff,  )    Case No. 04-6261-KI
 )
vs.  )    OPINION
 )
JO ANNE B. BARNHART, Commissioner, )
Social Security Administration,  )
 )
       Defendant.  )

    Drew L. Johnson, P. C.
    Kathryn Tassinari
    1700 Valley River Drive, First Floor
    Eugene, Oregon  97401

        Attorneys for Plaintiff

    Karin J. Immergut
    United States Attorney
    District of Oregon

Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2904

Lucille G. Meis
David M. Blume
Vikash Chhagan
Social Security Administration
Office of General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Janet Tarver brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

Tarver applied for DIB on September 17, 2001. The claim was denied initially and on reconsideration. After a timely request for a hearing, Tarver, represented by counsel, appeared before an Administrative Law Judge ("ALJ") on January 12, 2004.

On April 27, 2004, the ALJ issued a decision finding Tarver was not disabled and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). Substantial evidence is such relevant evidence as a reasonable person might accept as

adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I.      ALJ's Decision

The ALJ found Tarver was suffering from hepatitis C with cirrhosis and subjective pain of indeterminate etiology/possible fibromyalgia. The ALJ also found she was suffering from an adjustment disorder with a depressed mood, but the condition was not severe. The ALJ found Tarver worked as a self-employed technical trainer after the date of alleged onset of disability, however, her earnings did not rise to a level that is considered substantial gainful activity. The ALJ found Tarver's allegations regarding her limitations credible only to the extent that the objective medical evidence supports such allegations. Dr. Littell, Tarver's treating physician, found Tarver "absolutely unable to sustain gainful, full-time employment." Tr. 16. The ALJ found this conclusion not to be supported when the entire record is considered. Steve Tarver, Tarver's husband, testified at the hearing as well. The ALJ did not specifically reject his testimony. Based on his determination of Tarver's residual functional capacity and the testimony

of a vocational expert, the ALJ concluded that Tarver retained the ability to perform past relevant work as a manager of volunteers and as a technical trainer.

II.   Tarver's History

Tarver, who was fifty-six at the time of the hearing, claims to have been disabled since June 1, 2000, due to liver failure with four years to live, fibromyalgia, damage to muscles, and many cramps in legs and other areas. Tarver has a Bachelors Degree and one year of graduate school.[1] Her past work experience includes employment as an instructional aide, volunteer manager, and a technical trainer.

Tarver testified she has not worked full-time since 2000. Tarver worked part-time through the end of 2002, finishing up outstanding contracts and acting as president of an Internet Service Provider. She stated that it was hard for her to sit for two hours at work and that she cannot sit through a movie. Tarver testified that she is unable to pick up anything heavier than two or three pounds, including a gallon of milk. She exercises for twenty minutes every day by walking around the house. Tarver also testified that she needs to lie down for approximately twenty minutes four to five times a day.

## DISCUSSION

I.   Credibility Determination

Tarver contends the ALJ improperly rejected her testimony. When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could

---

[1] The ALJ incorrectly reported that Tarver has two years of graduate school. Tr. 13.

reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ found Tarver's allegations regarding her limitations were credible only to the extent that the objective medical evidence supported such allegations. The ALJ found Tarver demonstrated the ability to perform a significant number of activities involving both physical and mental participation. Tarver testified to painting watercolors and working on her computer daily. She also stated that she leaves the house three to four afternoons a week to attend board meetings. Tarver performs chores around the house and does light grocery shopping. Due to this evidence, the ALJ concluded that Tarver may have a reduced ability to function compared to her previous active level, but she had demonstrated that she was capable of performing a wide range of light work activities.

In December 2000, William P. Maier, M.D., indicated that Tarver reported her energy level as poor, but she remained very active. In March 2002, David Morrell, M.D., examined

Tarver and concluded her pain was disproportionate to the objective findings. In April and August 2002, state agency reviewing physicians concluded she could perform light work despite her limitations. Accordingly, the medical evidence supports the ALJ's finding that Tarver may be limited in her abilities, but not to the extent she alleges.

Tarver alleged her condition was terminal. The ALJ found that no medical record substantiated or even implied her condition was terminal. Dr. Littell's records, from August 29, 2001, show that he noted Tarver has advanced hepatitis C with cirrhosis. Tarver was advised that she may need a liver transplant. On July 8, 2002, Dr. Littell's notes state that Tarver recently saw Dr. Wu, who told her that her condition had been stable for a year and it may be up to ten years before a liver transplant might be necessary. Although the records show that Tarver's condition is serious, there is no indication she was ever told it is terminal, as she alleges. To the contrary, Tarver was told she is stable and may not need medical attention for several years.

The ALJ stated clear and convincing reasons for limiting Tarver's credibility to those allegations which are supported by the objective medical evidence.

II. Medical Evidence

Tarver contends the ALJ improperly rejected the testimony of Dr. Littell, a treating physician. The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen, 80 F.3d at 1285. If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is

contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

Dr. Littell wrote a letter on January 5, 2004, stating his opinion that Tarver is "absolutely unable to sustain gainful, full-time employment related to her chronic medical problems." Tr. 16. Dr. Littell listed the medical problems he believes Tarver suffers from, including hepatitis, fibromyalgia, adult onset diabetes mellitus, and overactive bladder.

The ALJ took issue with Dr. Littell including fibromyalgia in his list of medical problems causing Tarver's disability. The ALJ stated that there was no evidence that Dr. Littell conducted a trigger point examination of Tarver. Dr. Littell did not conduct such an examination, but did refer Tarver to Dr. Maier, a rheumatologist, who diagnosed her with fibromyalgia based on a positive trigger point evaluation. Since Dr. Maier is a specialist, Dr. Littell was correct in deferring to his opinion. The ALJ improperly discredited Dr. Littell's opinion for his alleged failure to conduct a trigger point examination. However, Dr. Morrell examined Tarver in March 2002 and concluded she did not have fibromyalgia. He also performed a trigger point evaluation and concluded Tarver had 7 of 18 trigger points, which is not diagnostic of fibromyalgia. Since there is a dispute about whether Tarver suffers from fibromyalgia, and since it is the ALJ's

responsibility to resolve conflicts in the medical evidence, I find that the ALJ did not err in rejecting Dr. Littell's diagnosis of fibromyalgia.

The ALJ also discredited Dr. Littell because his own records showed that Tarver's diabetes was controlled. Dr. Littell told Tarver on November 7, 2002, that if her sugars are consistently greater than 150 she should make an appointment to come in. Tarver's sugars were ranging between 80 and 160 at a visit to Dr. Littell on May 14, 2003. Tarver relies on this to show that her sugars were not well-controlled. However, this range does not show that her sugars were consistently over 150. Tarver also had other symptoms related to diabetes, including parethesias in her left finger and up the arm, fatigue, and excessive urination. The fatigue she was experiencing could be attributed to hepatitis, and her excessive urination could be attributed to her overactive bladder. The medical records show that Tarver's diabetes was controlled, therefore the ALJ was correct in discrediting Dr. Littell's opinion basing Tarver's disability in part on her diabetes.

Dr. Littell listed overactive bladder as a condition causing Tarver's disability, but the ALJ discredited Dr. Littell's opinion because his own medical records show her overactive bladder was controlled. The medical records show Tarver's overactive bladder necessitated getting up only once or twice a night. The ALJ properly discredited the portion of Dr. Littell's opinion citing Tarver's overactive bladder as contributing to her disability.

Finally, the ALJ rejected Dr. Littell's opinion because he declined to offer an opinion as to whether Tarver was disabled when she asked him in 2002. Tarver asked Dr. Littell to sign a form stating she was completely and totally disabled on November 7, 2002. This form would have allowed Tarver to have her student loans forgiven. Dr. Littell refused to sign the form

telling Tarver that he does not do disability determinations per se. Both the ALJ and Tarver utilize this denial to advance their positions. I cannot infer any meaning from Dr. Littell's refusal to offer a disability opinion in 2002, and the ALJ erred in attempting to do so.

Although the ALJ gave some reasons for discrediting Dr. Littell's opinion that were unsupported by the record, on the whole I find the ALJ did not err by rejecting Dr. Littell's opinion.

III.   Lay Testimony

Tarver alleges the ALJ improperly rejected the lay testimony of her husband, Steve Tarver. Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ did not specifically reject Mr. Tarver's testimony. The ALJ's residual functional capacity accounted for Mr. Tarver's testimony by stating that Tarver had lifting and other limitations. The ALJ is required to take lay testimony into account, but is not required to rely on it. It appears that the ALJ did take Mr. Tarver's testimony into account, as it is summarized in his opinion and reflected in Tarver's RFC.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

Dated this   11th    day of August, 2005.

                                         /s/ Garr M. King
                                         Garr M. King
                                         United States District Judge